UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
DONALD FELIX,

                                           Plaintiff,

        - against -

NEW YORK STATE DEPARTMENT OF CORRECTIONS
and COMMUNITY SUPERVISION, JILL LEONARD-
HORNE (Area Supervisor), MARIO DAVILA (Senior
Parole Officer), STEVE ROSENBAUM (Parole Revocation
Specialist), JOHN CIESLAK (Parole Officer), John Doe 1
and John Doe 2,

                                           Defendants.
----------------------------------------------------------------------x

**OPINION & ORDER**

No. 16-CV-7978 (CS)

Appearances:
Robert Rambadadt
The Rambadadt Law Office
New York, New York
*Counsel for Plaintiff*

Daphna Frankel
Assistant Attorney General
Office of the New York State Attorney General
New York, New York
*Counsel for Defendants*

Seibel, J.

        Before me is the motion to dismiss of Defendants New York State Department of

Corrections and Community Supervision ("DOCCS"), Jill-Lenard Horne, Mario Davila, Steve

Rosenblum, and John Cieslak (collectively, "Defendants").[1]  (Doc. 27.)  For the following

reasons, the motion is GRANTED.

----

[1] "Lenard-Horne" and "Rosenblum" are misspelled in the case caption.  (Doc. 28 ("Ds' Mem.") at 1 n.1.)  The Clerk
of Court is directed to amend the caption accordingly.

1

## I.     BACKGROUND

I accept as true the facts, but not the conclusions, set forth in Plaintiff's Second Amended Complaint, (Doc. 24 ("SAC")).

### A.     The Parties

Plaintiff Donald Felix, a parolee, is a resident of Fishkill, New York.  (SAC ¶¶ 7, 17.) DOCCS runs the New York State Department of Parole ("NYSDOP"), which oversees prisoners released before the completion of their sentences.  (*Id.* ¶¶ 8, 9.)  The individual Defendants were all employed by DOCCS and assigned to the NYSDOP office in Dutchess County, New York: Lenard-Horne as the area supervisor; Davila as a senior parole officer; Rosenblum as a parole revocation specialist; and Cieslak as a parole officer.  (*Id.* ¶¶ 11-14.)

### B.     Plaintiff's Arrest for Parole Violations

On or about May 28, 2014, Cieslak ordered Felix to report to the Dutchess County NYSDOP office.  (*Id.* ¶ 17.)  Upon his arrival, Plaintiff was informed that there had been allegations of domestic violence brought against him regarding his wife, Trisha Felix.  (*Id.* ¶¶ 18, 25.)  Cieslak instructed Plaintiff to sign special parole conditions, which included a provision forbidding him from cohabitating with Ms. Felix.  (*Id.* ¶ 18.)  Plaintiff did not believe that he had to sign the document and made legal and procedural arguments as to why.  (*Id.* ¶ 19.)  Upon his refusal to sign, Lenard-Horne and Davila were called over to confer on the matter.  (*Id.* ¶ 20.)

Lenard-Horne informed Plaintiff that he did not have to sign the document containing the special parole conditions, but would still have to abide by the conditions.  (*Id.*)  Plaintiff understood that he would have to abide by those conditions, yet continued to question why he had to sign the document itself.  (*Id.* ¶ 21.)  Cieslak, Lenard-Horne, and Davila then left the room

to discuss the matter. (*Id.* ¶ 22.) Shortly thereafter, Cieslak, in the presence of Lenard-Horne and Davila, and with their agreement, arrested Plaintiff. (*Id.* ¶ 23.)

A notice of violation was issued on May 30, 2014. (SAC Ex. A ("Tr. of Preliminary Hearing") at 4:10; *see* Doc. 29 Ex. A ("Parole Revocation Decision Notice") at 3.) Plaintiff was charged with four violations. (Tr. of Preliminary Hearing at 4:11-13, 6:1-3; Parole Revocation Decision Notice at 3.) The first three charges alleged a violation of condition of release #8 stemming from Plaintiff slapping Ms. Felix in the face with a pair of jeans and placing his hands around her neck: (1) threatening Ms. Felix's safety or well-being; (2) placing her in fear of imminent serious physical injury; and (3) causing injury to her. (Parole Revocation Decision Notice at 3-4.) The fourth charge alleged that Plaintiff, by refusing to sign the special parole conditions, did not comply with the instructions of his parole officer. (*Id.* at 4.)

**C.      Preliminary Revocation Hearing**

DOCCS held a preliminary revocation hearing on June 10, 2014. (Tr. of Preliminary Hearing at 1:12; 53:13.) Plaintiff was represented by counsel. (*Id.* at 1:21.)

Cieslak presented the State's case. (*Id.* at 6:1-5.) He explained that he investigated the allegations of domestic violence by reviewing the underlying police report, and by interviewing both the police officer that spoke with Ms. Felix at the police station and Ms. Felix. (*Id.* at 8:5-6, 17:18-21:11.) The police report described what Ms. Felix told the police officer: she and Plaintiff "got into [an] argument" and "[h]e hit her with a pair of her pants on/around [her] face/head [and] then pushed her onto [a] bed and put [his] hand around her neck but did not use force." (SAC Ex. C at 1.) The report went on to mention that Ms. Felix refused to cooperate and that she left before the paperwork was complete. (*Id.* at 1-2.) According to Cieslak, the police officer said Ms. Felix was "dishevelled [sic], . . . anxious, [and] frightened" at the time. (Tr. of

Preliminary Hearing at 18:9-10.)  Cieslak also testified that Ms. Felix "told [him that she and Plaintiff] had an argument and [Plaintiff] got mad, and he slapped her with a pair of jeans."  (*Id.* at 19:15-17; *see id.* at 21:8-11 (Cieslak recalling that Ms. Felix said that she "got hit about twenty times with the pair of jeans").)

Ms. Felix testified at the preliminary hearing.  (*Id.* at 33:23-44:8.)  She testified that she had told the police that Plaintiff "slapped [her] with a pair of pants" and that he "had thrown [her] down on the bed and put his hands around [her] neck," but she refused to sign a statement saying the same.  (*Id.* at 41:8-19.)  She further testified that when Cieslak asked her what she had told the police, she repeated the same story.  (*Id.* at 36:12-20.)  But at the hearing, she recanted, claiming what she told the police was "not what occurred."  (*Id.* at 41:20-22; *see id.* at 34:9-35:3; SAC ¶ 25.)  She explained that she was thinking about moving out after an argument with Plaintiff, but when she asked the police to escort her to her house to get her things, the officer purportedly "made [her] feel like [she] had to make it bigger than" what actually happened, so she "told [the officer] that [Plaintiff] had hit [her] and put his hands around [her] neck."  (Tr. of Preliminary Hearing at 34:9-35:9.)  She did not explain why she wanted a police escort to return home.

Cieslak also said that after his investigation, he met "with [his] supervisor, [and they] decided to amend [Plaintiff's] [s]pecial [c]onditions of [r]elease."  (*Id.* at 8:7-8.)  Cieslak gave Plaintiff the form with the special conditions and told Plaintiff that he needed to sign the form, but he refused.  (*Id.* at 8:10-16; *see* SAC Ex. D.)  The following appeared above the line where Cieslak wanted Plaintiff to sign:  "I hereby certify that I have read and understand the above Special Conditions of my release and that I have received a copy of these Special Conditions." (SAC Ex. D.)

Plaintiff testified that he did not refuse to sign the form but rather he "was trying to get clarification to understand what [he] was signing." (Tr. of Preliminary Hearing at 31:2-4; *see id.* at 27:11-28:4.)[2] He denied the domestic violence allegations and he claimed that he did not understand how he could be subject to a condition of release based on no evidence. (*Id.* at 29:1-3.) Plaintiff also testified that Lenard-Horne and Davila told him that he did not need to sign the form. (*Id.* at 29:4-7.)

Finally, Davila testified that Plaintiff had argued that he did not have to sign the form because it was a special condition of release and he was already released. (*Id.* at 46:9-15.) In response, Davila explained to Plaintiff that he was released to parole, which meant that his parole officer may impose other special conditions. (*Id.* at 47:2-7.) He further testified that after Plaintiff refused to sign, Lenard-Horne said that Plaintiff did not have to sign but the conditions would still be enforced. (*Id.* at 47:8-16, 48:11-15.)

The hearing officer concluded that there was probable cause as to the first charge based on Ms. Felix's statement to the police department, and as to the fourth charge based on the "credible testimony" of Cieslak and Davila regarding Plaintiff's refusal to sign the special conditions. (*Id.* at 51:17-52:1.) Accordingly, he directed that Plaintiff would be held until a final revocation hearing. (*Id.* at 52:2-3.) He also said that he would produce a written decision. (*Id.* at 52:4-6.)[3]

### D. Final Revocation Hearing

DOCCS held a final revocation hearing on August 7, 2014 before an administrative law judge ("ALJ"). (SAC ¶ 26; *id.* Ex. B ("Tr. of Revocation Hearing") at 1:13; 100:13.)

---

[2] Plaintiff admits in the SAC that he refused to sign. (SAC ¶ 20.)

[3] The record does not contain that written decision, but presumably the hearing officer found probable cause as to all four charges, given that the final hearing addressed all four.

Rosenblum presented the State's case; Plaintiff was represented by counsel. (Tr. of Revocation Hearing at 1:16-17, 1:21.) Ms. Felix testified that she went to the police because she wanted emotional support and that she did not provide the police with a signed, written statement because she had lied to them. (*Id.* at 20:14-21:23.) Cieslak testified, describing his interview with Ms. Felix, (*id.* at 31:12-34:7),[4] and the moments leading up to Plaintiff's arrest, (*id.* at 56:22-65:15).

According to Cieslak, after he initially instructed Plaintiff that he must sign the special conditions or else he would "certainly go to jail," (*id.* at 57:6-9), Lenard-Horne told Plaintiff that he did not need to sign the document, (*id.* at 55:4-13). Cieslak then told Plaintiff to "[f]orget what she said[:] . . . sign this document right now . . . [or] you are going to jail." (*Id.* at 63:10-14.) Plaintiff replied, "But she said . . . ," before Cieslak interrupted him and said, "Don't worry about what she said. I'm telling you that she made a mistake, and that you need to sign the document. . . . If you don't you are going to jail, believe me." (*Id.* at 63:15-19.) Afterwards, Cieslak met privately with Lenard-Horne and Davila, and he informed them that he directed Plaintiff to sign the form. (*Id.* at 61:20-62:12.) Then, Lenard-Horne and Davila conferenced and instructed Cieslak to arrest Plaintiff. (*Id.* at 64:12-21.)

Plaintiff also testified that after he voiced his objections to Cieslak, Cieslak went to get Lenard-Horne. (*Id.* at 92:14-16.) Lenard-Horne then told Plaintiff that he did not have to sign the document. (*Id.* at 94:8-14.) According to Plaintiff, he would have signed the document if she had told him otherwise. (*Id.*)

---

[4] Cieslak testified that Ms. Felix told him that Plaintiff hit her with a pair of pants, grabbed her, threw her down, and put his hands around her neck, and told her that if wanted to kill her, he would kill her any time he wanted to. (*Id.* at 31:25-32:10.) He further testified that when he pressed Ms. Felix about the lack of visible marks, she replied that she "ha[d] a mark . . . on [her] cheek" and that she had "very good makeup, and that's how [she] was able to go to" work. (*Id.* at 31:14-20.)

The ALJ concluded that Plaintiff had committed no parole violations. (SAC ¶ 28; Parole Revocation Decision Notice at 4.) The ALJ noted, among other things, that he did not find credible Ms. Felix's "explanations for why she initially reported falsely to the police," and there was no physical evidence nor a signed statement from Ms. Felix affirming the allegations. (Parole Revocation Decision Notice at 3.) The ALJ also observed that "DOCCS acted reasonably under the[] . . . circumstances in concluding that at least for the time being, [Plaintiff] should not have been allowed to live with Ms. Felix." (*Id.*) As to the fourth charge, the ALJ found that the "most authoritative, expressed judgment of DOCCS . . . seems to have been that it was not important to [Plaintiff's] supervision that he sign the special condition." (*Id.* at 4.) In other words, Lenard-Horne's statement that Plaintiff did not have to sign the special conditions "functionally overr[ode]" Cieslak's direction "so as to preclude a violation." (*Id.*)

On August 29, 2014, DOCCS imposed additional conditions of release, one of which barred Plaintiff from residing with Ms. Felix without the prior written permission of his parole officer. (SAC ¶ 29; *id.* Ex. E at 1.)

### E.    Procedural History

Plaintiff filed his original complaint on October 12, 2016. (Doc. 1.) In a letter dated October 10, 2017, Defendants requested a pre-motion conference on their proposed motion to dismiss. (Doc. 13.) Plaintiff responded with a letter of his own, (Doc. 15), and the Court held the pre-motion conference on November 6, 2017, (Minute Entry dated Nov. 6, 2017). With leave, Plaintiff filed a First Amended Complaint. (Doc. 17.) After Defendants submitted another pre-motion letter, (Doc. 19), I allowed Plaintiff to submit the SAC, (Doc. 22), which he did on December 29, 2017, (Doc. 24). The SAC advances claims for false arrest, excessive force, and malicious prosecution under the Fourth Amendment; cruel and unusual punishment

under the Eighth Amendment; and *Monell* liability.  (SAC ¶¶ 43-87.)  Defendants moved to

dismiss the SAC on February 1, 2018, (Doc. 27), Plaintiff opposed on March 30, 2018, (Doc. 34

("P's Opp.")), and Defendants replied on May 3, 2018, (Doc. 37).

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it 'has

authority to adjudicate the cause' pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168

(2d Cir. 2008) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425

(2007)), *rev'd on other grounds*, 585 F.3d 559 (2d Cir. 2009) (*en banc*).  "Determining the

existence of subject matter jurisdiction is a threshold inquiry, and a claim is 'properly dismissed

for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the

statutory or constitutional power to adjudicate it.'"  *Id.* (citation omitted) (quoting *Makarova v.

United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  "When jurisdiction is challenged, the plaintiff

bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction

exists, and the district court may examine evidence outside of the pleadings to make this

determination."  *Id.*  (citations and internal quotation marks omitted).  "The court must take all

facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but

jurisdiction must be shown affirmatively, and that showing is not made by drawing from the

pleadings inferences favorable to the party asserting it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547

F.3d 167, 170 (2d Cir. 2008) (alteration omitted), *aff'd on other grounds*, 561 U.S. 247 (2010).

### B.    Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).[5]

---

[5] Defendants also move to dismiss all of Plaintiff's claims because service of process was not timely, which is a ground for dismissal under Federal Rule of Civil Procedure 12(b)(5).  (Ds' Mem. at 22.)  Plaintiff did not present any opposition to that portion of the motion.  The excuses he presented to the Court in response to an order to show cause in all likelihood do not amount to good cause for his failure to timely effect service.  (*See* Docs. 4-5.)  But because the Court grants Defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6), it is not necessary to reach the service issue.  *See, e.g.*, *EZ Tag Corp. v. Casio Am., Inc.*, 861 F. Supp. 2d 181, 182 n.1 (S.D.N.Y. 2012); *Khan v. State Bank of India*, No. 01-CV-1305, 2001 WL 1463783, at *1 n.1 (S.D.N.Y. Nov. 15, 2001); *Hussein v. Waldorf Astoria Hotel, Rest. & Club Employees & Bartenders Local #6*, No. 99-CV-1652, 2000 WL 16928, at *1 (S.D.N.Y. Jan. 11, 2000).

When deciding a motion to dismiss, a court is entitled to consider:

(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted). To be incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect. Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotation[s] from the document is not enough." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (alteration in original) (citation and internal quotation marks omitted).

The Court will consider on this motion the documents attached to the SAC. In addition, the Court will consider the Parole Revocation Decision Notice, as it is integral to Plaintiff's allegations and cited in his opposition brief. *See Preston v. New York*, 223 F. Supp. 2d 452, 462 (S.D.N.Y. 2002).

## III.  DISCUSSION

### A.  Plaintiff's Claims

Plaintiff asserts claims for monetary damages against DOCCS and the individual Defendants in their official and individual capacities. (SAC ¶¶ 8, 11-14, 45, 47, 50, 52, 55-56, 62, 67, 73, 78, 81.) He also requests injunctive and declaratory relief, (SAC at Prayer for Relief ¶ d; *see id.* ¶ 1 ("Plaintiff seeks . . . affirmative and equitable relief . . . .")), but he does not

specify the injunctive or declaratory relief that he seeks.  In his opposition memorandum, he explains that he is seeking "injunctive relief to prevent the DOCCS from continuing to assert false actions against him as he is still on parole and subject to the supervision of the DOCCS and continues to suffer as he never received credit for the 93 days he was wrongly incarcerated." (P's Opp. at 12-13.)  The Court declines to consider this statement, however, because "[a] plaintiff . . . is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss."  *Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) (collecting cases).  But even if the Court were to consider Plaintiff's additional explanation, his claim for injunctive relief would still fail because he has not "alleg[ed] that [Defendants were] engaging in the unlawful practice against . . . [him] at the time of the complaint," *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993), nor has he "demonstrate[d] a certainly impending future injury," *Marcavage v. City of N.Y.*, 689 F.3d 98, 103 (2d Cir. 2012) (internal quotation marks omitted).  Accordingly, Plaintiff's claims for injunctive and declaratory relief are dismissed and the Court will only consider Plaintiff's claims for damages.

Plaintiff has withdrawn his claims of cruel and unusual punishment and *Monell* liability. (P's Opp. at 5 n.1.)  Additionally, he failed to respond to Defendants' argument that the excessive force claim should be dismissed.  (Ds' Mem. at 18-19.)  The excessive force claim is therefore dismissed because Plaintiff has abandoned it.  *See, e.g.*, *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

### B. Eleventh Amendment Immunity

Defendants argue that the Eleventh Amendment bars Plaintiff's claims against DOCCS and the individual Defendants in their official capacities.  (Ds' Mem. at 6-7.)  "The Eleventh Amendment bars a damages action in federal court against a state and its officials when acting in their official capacity unless the state has waived its sovereign immunity or Congress has abrogated it."  *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

DOCCS is an agency of New York state, and as such it is "entitled to assert the state's Eleventh Amendment immunity where, for practical purposes, the agency is the alter ego of the state and the state is the real party in interest."  *Santiago v. N.Y.S. Dep't of Corr. Servs.*, 945 F.2d 25, 28 n.1 (2d Cir. 1991).  New York has not waived its sovereign immunity, nor has Congress abrogated states' sovereign immunity through 42 U.S.C. § 1983.  *See id.* at 31; *Ortiz v. Russo*, No. 13-CV-5317, 2015 WL 1427247, at *5 (S.D.N.Y. Mar. 27, 2015) (citing *Santiago*, 945 F.2d at 31); *Johnson v. New York*, No. 10-CV-9532, 2012 WL 335683, at *1 (S.D.N.Y. Feb. 1, 2012) (same).  And the individual Defendants are employees of DOCCS, so Eleventh Amendment immunity extends to them in their official capacities as well.  *See, e.g.*, *Pizarro v. Gomprecht*, No. 10-CV-4803, 2013 WL 990998, at *8 (E.D.N.Y. Feb. 13, 2013), *report and recommendation adopted*, 2013 WL 990997 (E.D.N.Y. Mar. 13, 2013).  Plaintiff's damages claims against DOCCS and the individual Defendants in their official capacities are therefore barred and must be dismissed for lack of subject matter jurisdiction.[6]

---

[6] In the section of his opposition memorandum addressing the Eleventh Amendment issue, Plaintiff included two pages of analysis wholly unrelated to the Eleventh Amendment issue or even this case.  (P's Opp. at 13-15.)  Plaintiff's counsel should be more careful in the future.

### C. False Arrest

Plaintiff asserts a false arrest claim against Lenard-Horne, Davila, Cieslak, and Rosenblum.  (SAC ¶¶ 43-47.)[7]  Claims for false arrest under § 1983 must be analyzed under the law of the state in which the arrest occurred.  *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004).  Under New York law, to prevail on a false arrest claim, Plaintiff must plausibly allege that:  "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged."  *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal quotation marks omitted).

Only the fourth prong is in dispute.  An arrest by a police officer is privileged if it is based on probable cause.  *Id.* at 135; *see Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").  "Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted).  "The existence of probable cause to arrest – even for a crime other than the one identified by the arresting officer – will defeat a claim of false arrest under the Fourth Amendment."  *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016).  "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some

---

[7] Rosenblum was the parole revocation specialist at the final revocation hearing and it is not alleged that he was present for, or played any role in, Plaintiff's detention at the NYSDOP office in Dutchess County.  Thus, the SAC has failed to specify Rosenblum's personal involvement in any false arrest, so that claim against Rosenblum is dismissed.  *See Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted).

person, normally the putative victim or eyewitness." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (internal quotation marks omitted); *see Singer*, 63 F.3d at 118. Officers may also rely on the allegations of fellow officers. *Martinez*, 202 F.3d at 634. Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

"When a parolee is involved, the lower 'reasonable cause' cause standard is in place." *Gathers v. White*, No. 04-CV-5454, 2007 WL 446755, at *4 (E.D.N.Y. Feb. 8, 2007), *aff'd sub nom. Gathers v. Burdick*, 308 F. App'x 525 (2d Cir. 2009) (summary order); *see Alvarado v. City of N.Y.*, 482 F. Supp. 2d 332, 337 (S.D.N.Y. 2007). New York's parole regulations provide that "[r]easonable cause exists when evidence or information which appears reliable discloses facts or circumstances that would convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that a releasee has committed the acts in question or has lapsed into criminal ways or company." 9 N.Y.C.R.R. § 8004.2(c) (emphasis added).

An arresting officer may also avoid liability for a false arrest claim by demonstrating that he is entitled to qualified immunity. *Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (*per curiam*) (internal quotation marks omitted). "An officer's [probable cause] determination is objectively reasonable if there was 'arguable' probable cause at the time of the arrest – that is, if officers of reasonable competence could disagree on whether the probable cause test was met." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 157 (2d Cir. 2013) (internal quotation marks omitted); *see Arrington v. City of N.Y.*, 628 F. App'x 46, 49 (2d Cir. 2015) (summary order) ("For false arrest and malicious prosecution claims, an officer's probable cause determination is 'objectively reasonable' provided there was

'arguable' probable cause.").  With respect to false arrest, dismissal "is appropriate when the only conclusion a rational jury could reach is that reasonably competent police officers could under the circumstances disagree about the legality of the arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *see District of Columbia v. Wesby*, 138 S. Ct. 577, 589-93 (2018) (qualified immunity applies unless "existing precedent" places the unlawfulness "of the particular arrest beyond debate") (internal quotation marks omitted).  At the motion to dismiss stage, the qualified immunity defense may only be established if it is "based on facts appearing on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

As a threshold matter, as Defendants note, (Ds' Mem. at 11-12), the instant issue – whether Defendants had reasonable cause to believe Plaintiff violated his parole conditions – was an issue before the hearing officer at the preliminary revocation hearing.[8]  Courts have accorded preclusive effect to probable cause determinations made at preliminary revocation hearings.  *See Ariola v. LaClair*, No. 08-CV-116, 2014 WL 4966748, at *19 (N.D.N.Y. Sept. 30, 2014) ("[A]bsent any allegation contesting the validity of the arrest warrant, this Court may presume that probable cause exists, as was found at the conclusion of the preliminary parole revocation hearing, and therefore would act as a bar against any claim for false arrest."); *Bostic v. Harder*, No. 06-CV-540, 2009 WL 3165546, at *6 (N.D.N.Y. Sept. 25, 2009) ("[T]he determination by the [ALJ] at the preliminary parole revocation hearing finding that there was probable cause to believe that Plaintiff struck his wife such to violate one of Plaintiff's parole conditions is identical to the probable cause determination that is decisive of the [instant] false arrest claims . . . ."); *Gathers*, 2007 WL 446755, at *5 (on summary judgment, dismissing false

---

[8] Plaintiff acknowledges that "[p]robable cause was found at the preliminary revocation hearing," (P's Opp. at 6), but he does not address Defendants' collateral-estoppel argument.

arrest claim where, among other things, "hearing officer at [a] preliminary [revocation] hearing concluded that there was probable cause for the arrest"); *Erwin v. Russi*, No. 97-CV-5818, 1998 WL 474096, at *5 (S.D.N.Y. Aug. 11, 1998) ("New York courts have consistently held that a civil rights claim rooted in the absence of probable cause is barred by the collateral estoppel doctrine where there was a prior judicial determination that probable cause existed.") (collecting cases).

As in *Bostic*, "[t]he issue [of probable cause] was necessarily decided and material in the preliminary parole revocation hearing, and Plaintiff, who was represented by counsel, had a full and fair opportunity to litigate the issue in the earlier action." 2009 WL 3165546, at *6. Thus, collateral estoppel prevents Plaintiff from re-litigating the issue. *Id.* (citing *Univ. of Tennessee v. Elliot*, 478 U.S. 788, 799 (1986)).

But even if collateral estoppel did not bar Plaintiff's claim, the Court would find that Defendants had probable cause, not merely arguable probable cause or reasonable cause, to believe that Plaintiff violated at least one parole condition. Under New York law, a releasee is prohibited from behaving in a manner that "violate[s] the provisions of any law to which he is subject which provides for penalty of imprisonment" or in a manner that "threaten[s] the safety or well-being of himself or others." 9 N.Y.C.R.R. § 8003.2(h). Cieslak received the police report describing what Ms. Felix told the police: she and Plaintiff "got into [an] argument" and "he hit her with a pair of her pants on/around [her] face/head [and] then pushed her onto [a] bed and put [his] hands around her neck but did not use force." (SAC Ex. C at 1.) Cieslak also spoke to Ms. Felix, who confirmed her statement. (Tr. of Preliminary Hearing at 36:12-20, 38:23-39:1; *see* Tr. of Revocation Hearing at 18:25-19:11.) In making his reasonable cause

determination, Cieslak was "entitled to rely on the victim['s] allegations that a crime ha[d] been committed . . . and the allegation[] of [a] fellow police officer[]." *Martinez*, 202 F.3d at 634.

Even if Cieslak relied on mistaken information – or, as Ms. Felix later contended, intentionally false information – his reliance on the police report and his interview with Ms. Felix was reasonable. *See Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010) ("Probable cause may also exist where the officer has relied on mistaken information, so long as it was reasonable for him to rely on it."); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (officer can rely on information from victim or witness absent reason to doubt that person's veracity). Moreover, "[t]he later dismissal of the violation charges did not alter the fact that there was probable cause for the arrest and prosecution." *Gathers*, 2007 WL 446755, at *5. Nor did Ms. Felix's later recantation. *See Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 527 (S.D.N.Y. 2015) (witness's later recantation irrelevant because probable cause determined based on information officers had at time of arrest) (collecting cases). And there is no allegation that Cieslak had any reason to doubt her at the time. *See id.* As a result, Defendants had probable cause, and certainly reasonable cause, to detain Plaintiff.

Plaintiff makes two arguments in opposition. First, he argues that Cieslak was skeptical of Ms. Felix's claim that she was struck twenty times, relying on Cieslak's testimony at the final revocation hearing. (P's Opp. at 16-17.) This argument mischaracterizes Cieslak's testimony. While Cieslak testified that he was suspicious about not being able to see visible marks, he also testified that Ms. Felix "seemed credible" and that he "didn't think she was lying. (*See* Tr. of Revocation Hearing at 39:9-40:6.) Even assuming Cieslak did not notice visible marks on Plaintiff, the lack of physical evidence of an assault on the victim's body is not fatal to finding

reasonable cause if the victim reported that she had been assaulted. *See Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir. 2014).

Second, Plaintiff argues that there was no reasonable cause for taking Plaintiff into custody because Ms. Felix later said that they merely had a verbal argument and that Plaintiff never hit her. (P's Opp. at 6.) This information, however, was not available to Cieslak, Lenard-Horne, and Davila at the time of the arrest and is therefore irrelevant to their probable cause determination. *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("When determining whether probable cause exists courts must consider those facts *available to the officer* at the time of the arrest and immediately before it . . . .") (emphasis in original) (internal quotation marks omitted). But even if Cieslak, Lenard-Horne, and Davila were aware of Ms. Felix's recantation before they arrested Plaintiff, the argument is unpersuasive, as it ignores an all too common dynamic in domestic violence cases – a recantation from the victim. "'[A] recantation is not unusual in domestic violence cases' because '[v]ictims of this type of violence often are protective of, and deny allegations against, their abusers.'" *Kucera v. Tkac*, No. 12-CV-264, 2014 WL 6463292, at *12 (D. Vt. Nov. 17, 2014) (quoting *United States v. Carthen*, 681 F.3d 94, 103 (2d Cir. 2012)); *see United States v. Dunlap*, No. 06-CR-244, 2012 WL 3656636, at *3 (D. Neb. Aug. 24, 2012) ("A domestic violence victim is particularly vulnerable to pressure to recant accusatory testimony and an offender should not be able to reap the benefit of that vulnerability when other reliable evidence points to guilt."); *see also* Tom Lininger, *Prosecuting Batterers After Crawford*, 91 Va. L. Rev. 747, 768 (2005) ("Victims of domestic violence are more prone than other crime victims to recant or refuse to cooperate after initially providing information to police. Recent evidence suggests that 80 to 85 percent of battered women will recant at some point."). For this reason, recantations from victims of domestic violence should

be viewed "with the utmost suspicion," and the Court will not treat Ms. Felix's recantation as vitiating reasonable cause. *Carthen*, 681 F.3d at 102 (quoting *Haouari v. United States*, 510 F.3d 350, 353 (2d Cir. 2007)). Ms. Felix concededly went to the police for help after an altercation with Plaintiff, wanted them to accompany her when she returned home to gather her things, and reported that Plaintiff had been violent toward her. Thus, even if she had recanted before the preliminary hearing, it would have been entirely reasonable for Cieslak to credit her contemporaneous statements rather than her after-the-fact version.

Because the SAC and the attached exhibits demonstrate that Cieslak, Lenard-Horne, and Davila had probable cause to detain Plaintiff, Plaintiff's false arrest claim is dismissed.

### D.    Malicious Prosecution

Plaintiff asserts a malicious prosecution claim against Lenard-Horne, Davila, Cieslak, and Rosenbaum. (SAC ¶¶ 53-62.) As with Plaintiff's false arrest claim, Plaintiff's malicious prosecution claim must be analyzed under New York law. *See Manganiello*, 612 F.3d at 161. To establish a malicious prosecution claim under New York law, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* (internal quotation marks omitted). Defendants' argue that Plaintiff has failed to sufficiently allege the third and fourth elements. (*See* Ds' Mem. at 12-14.)

As with false arrest claims, "the existence of probable cause is a complete defense to a claim of malicious prosecution in New York," *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003), but unlike false arrest claims, the defendant must have possessed probable cause as to each offense charged, *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991). "In the context of a

malicious prosecution claim, probable cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (internal quotation marks omitted). Therefore, "the existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced (e.g., the time of the arraignment), not the time of the . . . arrest." *Morgan v. Nassau Cnty.*, No. 03-CV-5109, 2009 WL 2882823, at *10 (E.D.N.Y. Sept. 2, 2009) (internal quotation marks omitted). "If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'" *Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) (summary order) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)).

As a preliminary matter, the SAC does not clarify the basis for charging each of the individual Defendants with malicious prosecution other than the conclusory allegation that they agreed to engage in the malicious prosecution of Plaintiff. (*See* SAC ¶ 56.) Lenard-Horne and Davila, according to Cieslak, instructed Cieslak to arrest Plaintiff. (Tr. of Revocation Hearing at 64:12-21). But Plaintiff does not identify any involvement on their parts in the commencement or continuation of Plaintiff's revocation proceedings. Accordingly, the malicious prosecution claim is dismissed as to Lenard-Horne and Davila. *See Norton v. Town of Islip*, 678 F. App'x 17, 20 n.3 (2d Cir. 2017) (summary order) (affirming dismissal of malicious prosecution claim against defendants because complaint failed to allege sufficient personal involvement) (citing *Farid*, 593 F.3d at 249). That leaves Rosenblum and Cieslak as the remaining defendants accused of malicious prosecution, but they are entitled to absolute or qualified immunity.

"Parole officers . . . receive absolute immunity for their actions in initiating parole revocation proceedings and in presenting the case for revocation to hearing officers, because such acts are prosecutorial in nature." *Scotto v. Almenas*, 143 F.3d 105, 112 (2d Cir. 1998); *see White v. Cty. of Dutchess*, No. 15-CV-8744, 2016 WL 4449720, at *4 (S.D.N.Y. Aug. 23, 2016) ("[P]arole officers and parole revocation specialists are entitled to absolute immunity when they initiate parole revocation proceedings and present the case to revocation hearing officers."). Parole officers are also entitled to absolute immunity for any liability resulting from their testimony at a revocation hearing. *See Miller v. Garrett*, 695 F. Supp. 740, 745 (S.D.N.Y. 1988) (extending absolute immunity to parole officer who, among other things, testified at preliminary hearing); *see also Rolon v. Henneman*, 443 F. Supp. 2d 532, 536 (S.D.N.Y. 2006) ("It is well established that testifying witnesses, including police officers, are entitled to absolute immunity from liability under § 1983 based on their testimony.") (citing *Briscoe v. LaHue*, 460 U.S. 325 (1983)), *aff'd*, 517 F.3d 140 (2d Cir. 2008). Additionally, parole officers receive qualified immunity for preparing violation reports and recommending an arrest warrant. *Scotto*, 143 F.3d at 112.

Rosenblum was the parole revocation specialist who prosecuted the case at the final revocation hearing, so he is absolutely immune from any claims arising from his role in that hearing. Cieslak presented the State's case at the preliminary revocation hearing and was a witness in the final revocation hearing, and therefore he is immune from any claims arising from his role in those hearings. To the extent Plaintiff brings the malicious prosecution claim against Cieslak because he apparently wrote the violation report, (Tr. of Preliminary Hearing at 4:11-13; 19:6-12), Cieslak is entitled to qualified immunity. There was reasonable cause, or at least arguable reasonable cause, to prosecute Plaintiff for: (1) behaving in a manner that "violate[s]

the provisions of any law to which he is subject which provides for penalty of imprisonment" or in a manner that "threaten[s] the safety or well-being of himself or others," 9 N.Y.C.R.R. § 8003.2(h); and (2) failing to "comply with the instructions of [his] Parole Officer," *id.* § 8003.2(l).

Plaintiff argues that Ms. Felix's recantation defeated reasonable cause as to the three charges based on § 8003.2(h), but for the reasons discussed above, her recantation does not "ma[k]e apparent" the "groundless nature of th[ose] charges." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996). At the very least, Cieslak would be entitled to qualified immunity. Parole officers of reasonable competence would not agree that a domestic violence victim's recantation nullified reasonable cause. To the contrary, many reasonable officers would regard it as irresponsible to walk away from a charge supported by contemporaneous victim statements made in circumstances corroborating their sincerity, simply because the victim, when testifying in the presence of the alleged abuser, changes her story for alleged reasons as unconvincing as Ms. Felix's claim that she went to the police only for "emotional support," (Tr. of Revocation Hearing at 20:14-21:23), and embellished her story at the behest of an officer, (Tr. of Preliminary Hearing at 34:9-35:9).

Next, Plaintiff argues that there was no reasonable cause to prosecute him for failing to comply with Cieslak's direction to sign the document containing the special parole conditions because Leonard-Horne said that Plaintiff did not have to sign. (P's Opp. at 18-19.) The Court disagrees. The direction to sign appears to be objectively reasonable[9] and Plaintiff concedes he understood what he was directed to do. Although Lenard-Horne initially said Plaintiff did not have to sign, by Plaintiff's account she almost immediately changed her mind. (SAC ¶¶ 20-23.)

---

[9] Requiring a parolee to sign conditions ensures that there will be no later dispute regarding what he was told or understood.

This account is consistent with Cieslak's testimony that he countermanded Lenard-Horne and Lenard-Horne then agreed that arresting Plaintiff was appropriate. (Tr. of Revocation Hearing at 55:4-13, 63:15-19, 61:20-62:14, 64:12-21.) While it may have been confusing and even unfair to tell Plaintiff that he had to sign, then tell him he need not, then tell him he had to, then charge him for not doing so, it is apparent from Plaintiff's version of events that he did refuse to sign and maintained his objection to doing so. (SAC ¶ 20; *see* Tr. of Preliminary Hearing at 28:11-31:4; Tr. of Revocation Hearing at 89:8-93:5.)

At the least, parole officers of reasonable competence could disagree on whether it was proper to charge Plaintiff for failing to comply with the instruction to sign the document. After all, the hearing officer at the preliminary hearing found probable cause as to that charge, which further bolsters the reasonableness of prosecuting Plaintiff for that charge. *See Doe ex rel. Doe v. Whelan*, 732 F.3d 151, 156 (2d Cir. 2013) (noting reasonableness of officer's action bolstered by subsequent court finding). And Plaintiff has pointed to no clearly established law saying that a supervising officer's temporary overruling of a subordinate officer's directive means the subordinate officer cannot charge the parolee for refusing to follow the order that preceded or followed that supervisor's statement. *See Wesby*, 138 S. Ct. at 591 (qualified immunity appropriate where illegality not obvious and no precedent – "much less a controlling case or robust consensus of cases – [has found] a Fourth Amendment violation under similar circumstances") (internal quotation marks omitted); *id.* at 590 (given "imprecise nature" of probable cause standard, Supreme Court has "stressed the need to identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment") (internal quotation marks omitted).

In sum, Plaintiff's malicious prosecution claim against all of the individual Defendants is dismissed.

## IV.   <u>LEAVE TO AMEND</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has amended his complaint twice, (*see* Docs. 17, 24), after having the benefit of a pre-motion letter from Defendants outlining their proposed grounds for dismissal, (*see* Doc. 13), and the discussion at the November 6, 2017 pre-motion conference, (Minute Entry dated Nov. 6, 2017).  Plaintiff's failure to fix deficiencies in his previous pleadings, after being provided ample notice of them, is alone sufficient ground to deny leave to amend *sua sponte*.  *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion

from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted); *see also Payne v. Malemathew*, No. 09-CV-1634, 2011 WL 3043920, at *5 (S.D.N.Y. July 22, 2011) ("That Plaintiff was provided notice of his pleading deficiencies and the opportunity to cure them is sufficient ground to deny leave to amend *sua sponte*.").

Further, Plaintiff has not asked to amend again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this opinion. Accordingly, the Court declines to grant leave to amend *sua sponte*. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

## V. <u>CONCLUSION</u>

For the reasons stated above, Defendants' motion, (Doc. 27) is GRANTED. Causes of Action One, Two, and Three are dismissed for failure to state a claim, and Causes of Action Four, Five, and Six are dismissed as withdrawn. The Clerk of Court is respectfully directed to

terminate the pending motion, (Doc. 27), effect the amendment described in footnote one above,

and close the case.

**SO ORDERED.**

Dated: July 23, 2018
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.